**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-03955-STV

ALKHAZ KHUBIEV

      Petitioner,

v.

JUAN BALTASAR; *et al*,

      Respondents.

---

**AMENDED ORDER GRANTING APPLICATION FOR WRIT OF HABEAS CORPUS**

---

This matter comes before the Court pursuant to the Order of Reference [#11], entered on January 9, 2026, and the parties' unanimous consent to disposition of this action by a United States Magistrate Judge [#10].  Petitioner Alkhaz Khubiev is in custody at the Aurora Detention Center.  [#5 at ¶ 7]  On December 9, 2025, Petitioner commenced this action through counsel by filing an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241.  [*Id.*]  The Court has carefully reviewed the filings to date, the applicable case law, and oral argument conducted during a status conference held on February 4, 2024 [#17].  For the following reasons, the Court **GRANTS** the Petition **IN PART.**

**I.      BACKGROUND**[1]

Petitioner is a native and citizen of Russia who entered the United States on July 28, 2021 and was granted temporary humanitarian parole through July 26, 2022.  [##5 at

---

[1] Petitioner filed an initial Complaint on December 9, 2025 with exhibits attached.  [#1] On December 13, 2025, Petitioner filed an Amended Complaint without any of the

¶¶ 21-22; 1-2 at 2]  According to Respondents, shortly after Petitioner's entry, United States Customs and Border Protection ("CBP") issued a Notice to Appear ("NTA"), but that notice was not filed with the Executive Office for Immigration Review ("EOIR") and removal proceedings were not initiated at that time.  [#12 at 2]  On July 22, 2022, while still on parole, Petitioner filed an application for asylum based on a fear of persecution in Russia.  [##5 at ¶ 22; 12 at 2]  Petitioner resided in the United States for four years after entry, worked in accordance with his work authorization, filed taxes, and did not incur any criminal violations during that period.  [#5 at ¶ 24]

On July 30, 2025,[2] United States Citizenship and Immigration Services ("USCIS") issued a new NTA and filed it with EOIR, initiating removal proceedings against Petitioner. [##1-4 at 2; 12 at 2]  The NTA classified Petitioner as an "arriving alien" and informed him that his parole status had terminated.  [*Id*.]  On November 20, 2025, the Department of Homeland Security ("DHS") detained Petitioner while he was traveling to work.  [#5 at ¶ 3]  Petitioner was charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i)(I) and is currently detained at the Aurora Detention Center in Colorado.  [## 5 at ¶ 7; 12 at 2]

Petitioner filed this habeas action on December 9, 2025, pursuant to 28 U.S.C. § 2241 [#1], and filed the operative Petition on December 13, 2025 [#5].  Petitioner brings four claims for relief under the Fifth Amendment of the United States Constitution, the

---

previously filed exhibits.   However, the Amended Petition and the Government's Response cite to these exhibits throughout as they are central to Petitioner's claims. Accordingly the Court considers exhibits ## 1-1, 1-2, 1-3, 1-4, and 1-5 as incorporated by reference.
[2] Petitioner alleges this occurred on July 13, 2025 [#5 at ¶ 23], but Petitioner's cited exhibit includes the date of July 30, 2025 on the NTA [#1-4].

Immigration and Nationality Act ("INA"), and the APA. [*Id*. at ¶¶ 71-93] First, he alleges that Respondents violated the Fifth Amendment's Due Process Clause by detaining Petitioner without cause. [*Id*. at ¶¶ 71-76] Second, he alleges Respondents violated the INA by detaining him after he was paroled without a hearing. [*Id*. at ¶¶ 77-81] Third, he alleges Respondents violated the INA by revoking Petitioner's parole without an individualized assessment of his case. [*Id*. at 82-86] Fourth, he alleges Respondents violated the APA by revoking his release without due consideration of his circumstances. [*Id*. at ¶¶ 87-93] Petitioner seeks an order directing Respondents to either immediately release him or to provide an individualized hearing. [#1 at 17-18]³

## II.    LEGAL FRAMEWORK

Section 2241 authorizes courts to adjudicate a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This includes "[c]hallenges to immigration detention." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *3 (D. Colo. Dec. 17, 2025). "The writ of habeas corpus is designed to challenge 'the fact or duration' of a person's confinement." *Ramirez v. Bondi*, No. 25-cv-1002-RMR, 2025 WL 1294919, at *3 (D. Colo. May 5, 2025) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). The

---

³ Petitioner's Amended Complaint did not include a section outlining Petitioner's requested relief. [*See* #5 at 21] Consistent with other parts of this Order, the Court references Petitioner's initial Complaint on this matter as incorporated by reference. [#1 at 17-18]

individual in custody bears the burden of proving that their detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

### III.    ANALYSIS

This case turns on two related questions: whether Petitioner's parole remained in effect at the time of his detention and whether his current detention is governed by 8 U.S.C. § 1225 or § 1226. The Court begins with its analysis of Petitioner's parole then turns to the statutory provision applicable to Petitioner's current detention.

### A.    Parole

Under the INA, parole is a discretionary mechanism that permits the temporary physical presence of a noncitizen in the United States without effecting an admission. 8 U.S.C. § 1182(d)(5)(A). Parole is granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit and "shall not be regarded as an admission of the alien." *Id*.

Parole may terminate either by operation of law upon expiration of the authorized period or by discretionary action of the Secretary. 8 C.F.R. § 212.5(e). Where parole expires according to its terms, it is "automatically terminated," and no written notice is required. 8 C.F.R. § 212.5(e)(1)(ii). If parole does not terminate automatically, it must be ended when its purpose is accomplished or when a designated official determines that continued presence is no longer warranted; termination under this provision requires written notice, which may be satisfied by service of a charging document. 8 C.F.R. § 212.5(e)(2). A "charging document" is defined as a "written instrument which initiates a proceeding before an Immigration Judge." 8 C.F.R. § 244.1. Relevant here, these documents include a Notice to Appear. *Id*. Upon termination of parole, the noncitizen is

4

"to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).

Respondents argue that Petitioner's parole was automatically terminated upon the expiration of the date of his parole—July 26, 2022—which did not require written notice. [#20 at 7]  Even so, Respondents claim they sent written notice to Petitioner in the form of a NTA on July 30, 2025 that expressly stated that Petitioner's parole was "terminated or expired" [*id*. at 8-9; #1-4 at 2], which Respondents claim Petitioner concedes he received [#20 at 9].  According to Respondents, Petitioner's asylum application was sent to EOIR for adjudication at the same time as the NTA and was closed by USCIS.  [*Id*. at 8-9]  Petitioner was later detained on November 20, 2025, after the termination of his parole on July 26, 2022, and after the NTA was issued on July 30, 2025.  [*Id*. at 5]

Petitioner argues that there is no automatic expiration of parole and the government may not terminate parole without first making an affirmative determination that the purpose of parole has been accomplished or that humanitarian or public benefit justifications no longer exist.  [#21 at 2-3]  Relying on 8 C.F.R. § 212.5(e)(2)(i), Petitioner contends that such a determination, and corresponding notice, is required even where the parole period has expired.  *Id*.  In Petitioner's view, the expiration of parole does not itself suffice to end parole status without this additional justification.

Petitioner's argument that there is no automatic expiration of parole misreads the regulation by conflating automatic expiration with discretionary termination.  Under 8 C.F.R. § 212.5(e)(1), parole "shall be automatically terminated" upon expiration of the authorized period, and no written notice or further justification is required.  By contrast, Section 212.5(e)(2)(i) applies only where the government elects to terminate parole on

notice before it expires, and in that context requires a determination that the purpose of parole has been served or that humanitarian or public benefit justifications no longer exist.

Despite this plain language, Petitioner relies on the cross-reference in 8 C.F.R. § 212.5(e)(1), which provides that upon automatic termination of parole, the noncitizen shall be processed "in accordance with paragraph (e)(2)," to argue that DHS was required to make an affirmative determination justifying termination. [#21 at 3] The Court is not persuaded. As an initial matter, the plain language of Section 212.5(e)(1) expressly provides that parole "shall be automatically terminated" upon expiration of the authorized period and that "no written notice shall be required," which would be inconsistent with importing the notice and determination requirements applicable to discretionary termination under Section 212.5(e)(2). The more natural reading of the regulation is that the cross-reference governs the procedures that follow termination, not the prerequisites for termination itself—that is, once parole is terminated, the government must proceed with further inspection or a hearing under Sections 235 or 240 of the Act, or execute any existing exclusion, deportation, or removal order. 8 U.S.C. § 212.5(e)(2)(i). And if such an order cannot be carried out within a reasonable time, the individual must be re-paroled unless an authorized official determines that continued detention is required in the public interest. *Id*.

In this case, Petitioner was granted parole through July 26, 2022. The record does not reflect any extension or renewal of that parole, and no outstanding orders were entered at the time Petitioner's parole expired. Accordingly, the Court concludes that Petitioner's parole expired by operation of law on that date, and the provisions of Section 212.5(e)(2) concerning execution of prior orders and related determinations do not apply

6

here and do not impose additional requirements on the automatic expiration of parole under Section 212.5(e)(1)(ii).

### B. Detention Authority

Although Petitioner remained, in a formal sense, an applicant for admission following the expiration of his parole, that designation does not resolve the related question of detention authority presented here. The statutory scheme distinguishes between detention associated with the entry process and detention that arises after the Government has released an individual into the interior and later elects to pursue removal through proceedings under 8 U.S.C. § 1229a. The Court thus turns to the issue of Petitioner's detention.

The INA governs all aspects of immigration law. *See* 8 U.S.C. §§ 1101 *et seq*. In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") which substantially amended the INA. *Nken v. Holder*, 556 U.S. 418, 423-25 (2009) (outlining the changes to the statute). Relevant here, IIRIRA added the expedited removal proceedings of Section 1225 as an alternative mechanism for removing noncitizens from the United States alongside the existing Section 1226 and Section 1229a proceedings. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 106-107 (2020)); *see also Aleman Hernandez v. Baltazar*, No. 1:25-cv-3688-SKC-SBP, 2025 WL 3718159, at *2 (D. Colo. Dec. 23, 2025).

### 1. Removal Proceedings

"The usual removal process—commonly referred to as Section 240—involves an evidentiary hearing before an immigration judge, where a noncitizen may attempt to show that he or she should not be removed." *Aleman Hernandez*, 2025 WL 3718159, at *2

(quotations omitted). "These are adversarial proceedings where noncitizens have the right to hire counsel, examine the evidence against them, present their own evidence, and cross-examine witnesses." *Id*. (citing 8 U.S.C. § 1229a(b)(4)(A)-(B)). "These proceedings are recorded, often take months to resolve, and upon a decision by an immigration judge, are appealable to the Board of Immigration Appeals." *Id*. (citing 8 C.F.R. §§ 1003.1, 1240.15). "The BIA order is, in turn, appealable to a U.S. Court of Appeals." *Id*. (citing 8 U.S.C. § 1252).

"The second process provides for expedited removal [pursuant to 8 U.S.C. § 1225(b)(1)]. Under this provision, noncitizens who satisfy two criteria may be subject to expedited removal." *Id*. (citing 8 U.S.C. § 1225(b)(1)). "Under the first criterion, the noncitizens are 'inadmissible' to the United States because they either lack proper entry documents or they engaged in fraud or willfully misrepresented a material fact on their application for admission." *Id*. (citing 8 U.S.C. § 1225(b)(1)(A)(i)). "The second criteria provides that the noncitizens fall into at least one of two categories: (1) they are 'arriving in the United States,' 8 U.S.C. § 1225(b)(1)(A)(i) ('Arriving [Noncitizen] Provision'); and or (2) they 'have not been admitted' or paroled into the United States and have 'not affirmatively shown' to an immigration officer's satisfaction that they have been 'physically present in the United States continuously for [a] 2-year period immediately prior to the date of the determination of inadmissibility[,]' *id*. § 1225(b)(1)(A)(iii)(II) ('Designation Provision')." *Id*. "In contrast to the usual removal process, 'the expedited removal order is usually issued within a few days, if not hours.'" *Id*. (quoting *Make the Rd. New York v. Noem*, No. 25-cv-190 (JMC), 2025 WL 2494908, at *3 (D.D.C. Aug. 29, 2025)). "In these proceedings, noncitizens typically have no opportunity to review the evidence against

them or prepare a defense." *Id*. (citing 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(2)(iii)). "And there is almost no opportunity for judicial review." *Id*. (citing 8 U.S.C. § 1252(a)(2)(A)).

### 2.      Detention Pending Removal

The INA provides two options for detaining noncitizens pending removal proceedings. *Id*. First, Section 1225 authorizes the government to inspect, detain, and, if appropriate, remove applicants for admission. *Id*. (citing 8 U.S.C. § 1225). "Section 1225(b) requires the detention of two groups of 'applicants for admission.'" *Id.* (citing 8 U.S.C. § 1225(b)(1), (2)). "To the first grouping, § 1225(b)(1) . . . applies to noncitizens who (1) are inadmissible because they lack proper documentation or because they engaged in fraud or willful misrepresentations in their applications, *and* (2) fall within the 'Arriving [Noncitizen] Provision' or the 'Designation Provision.'" *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II)). "To the second grouping, § 1225(b)(2) applies 'in the case of [a noncitizen] who is an applicant for admission, [where] the examining immigration officer determines that [the noncitizen] *seeking admission* is not clearly and beyond a doubt entitled to be admitted.'" *Id.* (citing 8 U.S.C. § 1225(b)(2)(A) (emphasis added)). "Noncitizens detained under § 1225, no matter which grouping, are not entitled to bond hearings." *Id.* (citing *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018)).

Second, Section 1226 authorizes the arrest and detention of noncitizens "pending the outcome of removal proceedings." *Id.* at *3 (quoting *Jennings*, 583 U.S. at 289). Unlike Section 1225(b), Section 1226 generally provides for individualized custody determinations, including the possibility of release on bond (except where mandatory

9

detention under Section 1226(c) applies).[4]    A person "cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226."  *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025).

### 3.    Petitioner's Claims

Respondents contend that Petitioner remains an "applicant for admission" subject to mandatory detention under Section 1225(b) after the termination of parole because Petitioner reverted to the status he held prior to parole, namely, an applicant for admission who has not been formally admitted to the United States.  [##12-1 at ¶ 15; 20 at 2] Petitioner argues that his detention is governed by Section 1226(a) because it arises from removal proceedings initiated years after his release into the United States.  [#5 at ¶¶ 56-64]  The Court agrees with Petitioner.

Again, although Petitioner initially presented as an applicant for admission [#20 at 2], that status alone does not resolve the issue before the Court.  Just this month, another Court in this District rejected Respondents' argument that a petitioner necessarily reverts to the initial status after the termination of parole.  *See Rafibaev v. Noem*, No. 26-CV-

---

[4] Section 1226(c) "carves out a statutory category of [noncitizens] who may not be released under § 1226(a)."  *Aleman Hernandez*, 2025 WL 3718159, at *5 (quoting *Jennings*, 583 U.S. at 289) (emphasis omitted).  "Under this subcategory, noncitizens who fall 'into one of several enumerated categories involving criminal offenses and terrorist activities' are not eligible for release and must be detained without bond."  *Id*. (quoting Jennings, 583 U.S. at 289).  "Importantly, the plain text of section 1226(c) requires detention for certain noncitizens who are 'deportable' (meaning they were previously admitted to the United States) as well as certain noncitizens deemed 'inadmissible' (meaning they have not been admitted to the United States)."  *Id*. (quoting *Rodriguez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499, at *17 (W.D. Wash. Sept. 30, 2025)) (emphasis omitted).

00461-PAB, 2026 WL 607559, at *4 (D. Colo. Mar. 4, 2026).[5]  "[Section] 1182(d)(5)(A) does not state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained."  *Id.*  (citing *Qasemi v. Francis*, No. 25-cv-10029 (LJL), 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025)) (internal quotation marks omitted).  "Rather, it states that, following the expiration of parole, the noncitizen shall (1) 'forthwith return or be returned to the custody from which he was paroled' and (2) 'thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" (quoting 8 U.S.C. § 1182(d)(5)(A)).  "Neither of these requirements justify treating petitioner, who was paroled, as if he is 'arriving in the United States.'"  *Id*.

As United States District Judge Philip A. Brimmer recently explained:

First, returning petitioner "to the custody from which he was paroled" does not mean that petitioner's status under § 1225 reverts back to what it was when he was initially in custody.  In fact, § 1182(d)(5)(A) "recognizes that the parole physically happened, because it contemplates that the noncitizen must be returned to detention."  [*Coalition for Humane Immigrant Rights. v. Noem*, 805 F. Supp. 3d 48, 86 (D.D.C. 2025)].  Thus, § 1182(d)(5)(A) recognizes that noncitizens paroled under its authority are released into the United States.  It would be illogical that these noncitizens would revert back to being detained pursuant to § 1225(b)(1), which governs the inspection of noncitizens "arriving into the United States," instead of considering them detained under another applicable authority.  This is especially true given that § 1182(d)(5)(A) does not state that a noncitizen reverts back to the status he or she possessed before the grant of parole.  *See United States v. Handley*, 678 F.3d 1185, 1111 (10th Cir. 2012) (stating that courts should "ordinarily resist reading words or elements into a statute that do not appear on its face." (citation omitted)).

---

[5] Because the Court agrees with the *Rafibaev* conclusion and its reasoning, and does not believe it can improve on that reasoning in any way, the Court quotes extensively from that opinion.

*Id.*

"The second requirement of § 1182(d)(5)(A)—that after returning to custody a noncitizen's case shall continue to be dealt with in the same manner as any other applicant for admission—also does not make § 1225(b)(1) applicable." "Section 1225(a)(1) defines an applicant for admission as a noncitizen 'present in the United States who has not been admitted or who arrived in the United States (whether or not at a designated port of arrival . . .).'" *Id.* (quoting 8 U.S.C. § 1225(a)(1)). "Thus, an 'applicant for admission' need not be 'arriving in the United States.'" *Id.* "Rather, '[a]ll the term "applicant for admission" requires is presence in the United States without admission." *Id.* (quoting *Rodriguez-Acurio v. Almodovar*, 2:25-cv-6065 (NJC), 2025 WL 3314420, at *17 (E.D.N.Y. Nov. 28, 2025)). "And, as § 1182(d)(5)(A) specifies, parole is not regarded as admission." *Id.* (citing 8 U.S.C. § 1182(d)(5)(A)). "Thus, Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." *Id.* (citing *Rodriguez-Acurio*, 2025 WL 3314420, at *17).

Accordingly, this Court concludes that Section 1182(d)(5)(A) does not require Petitioner to be detained under the same statutory status as his original detention. Although Petitioner's parole expired in July 2022, DHS permitted him to reside in the United States for several years thereafter, during which time he applied for asylum and complied with the conditions of his presence. [#5 at ¶¶ 23-24] DHS did not initiate removal proceedings until July 2025, and Petitioner was not detained until November 2025, all while Petitioner was already present in the country. His detention therefore does

not arise from any ongoing entry or inspection process, but from DHS's decision to place him in removal proceedings under Section 1229a. In that posture, detention is properly understood as detention "pending a decision on whether the alien is to be removed," which falls within Section 1226(a),[6] notwithstanding Petitioner's initial classification at the time of entry. Interpreting Section 1225(b) to apply under these circumstances would permit mandatory detention based solely on an individual's historical classification at the time of entry, even after years of release into the interior of the United States. The Court declines to adopt such an expansive reading. *See Rafibaev*, 2026 WL 607559 at *2 ("Here, where petitioner has been released on parole pursuant to § 1182(d)(5)(A) for nearly two years, it is illogical to suggest that his re-detention is governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." (quotations omitted)).

Thus, because Petitioner is detained under Section 1226(a), he is entitled to an individualized bond hearing before an immigration judge.[7]

### 4. CONCLUSION

For the foregoing reasons, it is **ORDERED**:

---

[6] Further, Section 1225(b)(1) expressly distinguishes between categories of noncitizens based on whether they have been paroled into the United States. Specifically, Section 1225(b)(1)(A)(iii)(II) provides that the expedited removal provisions apply to a noncitizen "who has not been admitted or paroled into the United States" and who cannot demonstrate continuous physical presence in the country for the two years preceding the inadmissibility determination. By its plain terms, this language excludes from its scope individuals who have been paroled, thereby treating them differently from those who arrive at ports of entry without admission or parole. Accordingly, the statute does not place paroled noncitizens on equal footing with arriving noncitizens for purposes of applying § 1225(b)(1).

[7] Because the Court grants relief on statutory grounds, it declines to reach Petitioner's other statutory or constitutional claims. If Respondents fail to provide a bond hearing consistent with Section 1226(a), Petitioner may renew these arguments.

(1) that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [#5] is **GRANTED** to the extent it seeks a bond hearing;[8]

(2) Respondents shall provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within **SEVEN DAYS** of the date of this Court's order; and

(3) Respondents shall file a status report within **TEN DAYS** of the date of this Court's order to certify compliance.  The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

DATED: May 8, 2026                           BY THE COURT:

                                             s/Scott T. Varholak
                                             Chief United States Magistrate Judge

---

[8] To the extent Petitioner's Counsel seeks an award of attorney's fees, she must file a separate motion for fees that complies with the Federal Rules of Civil Procedure and the Local Rules of Practice for this District.